```
                                              USDC SDNY
                                              DOCUMENT
UNITED STATES DISTRICT COURT                  ELECTRONICALLY FILED
SOUTHERN DISTRICT OF NEW YORK                 DOC #:_____
                                              DATE FILED: 7/9/2025
```

---------------------------------------------------------------X
                                              :      25-cv-02895 (LJL)
In re: ELETSON HOLDINGS INC., et al.,         :
                                              :      MEMORANDUM AND
---------------------------------------------------------------X     ORDER

LEWIS J. LIMAN, United States District Judge:

Non-Party Daniolos Law Firm ("Daniolos") appeals, pursuant to 28 U.S.C. § 158(a) and Rules 8001, *et. seq.*, of the Federal Rules of Bankruptcy Procedure, from that part of the March 13, 2025 order of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), Dkt. No. 1-1[1], and the Bankruptcy Court's March 12, 2025 oral decision incorporated therein, Dkt. No. 1-2 (hereafter, "Tr.") at 60:24–62:6,[2] rejecting Daniolos's argument that (a) Daniolos has "not been served according to the Hague Convention"; and (b) "exercising personal jurisdiction over them is inconsistent with due process." Dkt. No. 11 at 1–2. Appellee Eletson Holdings Inc. ("Eletson")[3] moves for an order dismissing this appeal in

---

[1] Except where otherwise indicated, docket citations are to the docket in this Court and not to the docket in the Bankruptcy Court.
[2] The Court refers to the March 12, 2025 oral ruling and the March 13, 2025 formal written order together as the "Sanctions Order".
[3] Daniolos refers to appellee as "Reorganized Eletson Holdings Inc." Dkt. No. 3. The caption of the case in the Bankruptcy Court is *In Re Eletson Holdings Inc.*, and the entity that voluntarily submitted itself to the Bankruptcy Court's jurisdiction as debtor and was reorganized by the Bankruptcy Court is Eletson Holdings Inc. The notice of appeal states that one of the other parties to the case is "Provisional Holdings Inc." For purposes of this Memorandum and Order only, the Court assumes that such an entity has legal existence.

its entirety. Dkt. No. 12. For the reasons that follow, the motion is granted and the appeal is dismissed.

**BACKGROUND**

This appeal grows out of an order of the Bankruptcy Court on a motion for contempt. On February 19, 2025, Eletson filed its "Emergency Motion of Eletson Holdings Inc. for Entry of a Further Order in Support of Confirmation and Consummation of the Court-Approved Plan of Reorganization" *See In re Eletson Holdings Inc. et al.*, No. 23-10322 (Bankr. S.D.N.Y.), Bankr. Dkt. No. 1459 (the "Sanctions Motion"). Among other requested relief, the Sanctions Motion asked that the Bankruptcy Court "find the Ordered Parties in contempt of Court" and "impose coercive monetary sanctions against each of the Ordered Parties." Sanctions Motion ¶ 43. The "Ordered Parties" referenced in the Sanctions Motion and its accompanying proposed order included Daniolos.

Daniolos objected to the Sanctions Motion, asserting, among other things, (i) that the Bankruptcy Court lacked jurisdiction because Daniolos was not served under the Hague Convention, and (ii) the exercise of jurisdiction over Daniolos was inconsistent with due process. *See generally* Bankr. Dkt. No. 1507. For those reasons, Daniolos requested that the Bankruptcy Court deny the Sanctions Motion against it. *Id.* at 22.[4]

At a March 12, 2024 hearing, the Bankruptcy Court expressed its disagreement with Daniolos's assertions regarding personal jurisdiction. *See* Tr. at 61:5–62:8 ("The Court disagrees for several reasons. . . ."). The Bankruptcy Court entered a formal written order the following day. Dkt. No. 1-1; Bankr. Dkt. No. 1537. In that order, the Bankruptcy Court granted the Sanctions Motion and found a number of persons whom it defined as the "Violating Parties" in

---

[4] Daniolos also requested that the Court deny a November 25, 2024 sanctions motion and a February 6, 2025 sanctions motion. *Id.* Those motions are not at issue on this appeal.

2

contempt, but it did not find Daniolos in contempt, did not impose sanctions on Daniolos, and, indeed, did not order any relief against Daniolos. *See id*. The Bankruptcy Court thus granted Daniolos the ultimate relief requested in its opposition.

## DISCUSSION

Eletson argues that the Court lacks jurisdiction over this appeal for three independent reasons: (1) Daniolos is a prevailing party; (2) it lacks bankruptcy appellate standing; and (3) the Sanctions Order is not a final appealable order of the Bankruptcy Court. Dkt. No. 13.

"It is a fundamental principle of jurisprudence that a party may not appeal from a judgment or decree in his favor, for the purposes of obtaining a review of findings he deems erroneous which are not necessary to support the decree." *O'Brien v. State of Vermont (In re O'Brien)*, 184 F.3d 140, 141 (2d Cir. 1999); *see In re Paul J. DiPietro*, 2022 WL 880485, at *2 (2d Cir. Mar. 25, 2022)

The Second Circuit has recognized only few exceptions to the principle that a party who prevails below cannot appeal a judgment in its favor. "One exception arises when the prevailing party is aggrieved by the collateral estoppel effect of a district court's rulings." *Ashley v. Boehringer Ingelheim Pharms. (In re DES Litig.)*, 7 F.3d 20, 24 (2d Cir. 1993). A "second exception to the rule prohibiting appeal by a prevailing party arises, in some circumstances, where a prevailing party can show it is aggrieved by some aspect of the trial court's judgment or decree." *Id.* at 25. The Second Circuit has also held by summary order that a defendant aggrieved by a court's decision to dismiss a complaint without prejudice under Federal Rule of Civil Procedure 41(b) can appeal that determination when the defendant has moved that the complaint be dismissed with prejudice. *See Tacon v. Cromwell*, 2025 WL 1409747 (2d Cir. May 15, 2025). In so ruling, it has relied on authority that the defendant who has pursued a case to the point where it "is in a position to demand on the pleadings an opportunity to seek affirmative

3

relief," has suffered plain legal prejudice by a dismissal without prejudice. *Carmilli v. Grimes*, 436 U.S. 120, 124 (2d Cir. 2006) (quoting *In re Skinner & Eddy Corp.*, 285 U.S. 86, 93–94 (1924)).

In addition, when the losing party below takes an appeal, "a prevailing party [may] file a protective, conditional cross-appeal 'to insure that any errors against his interests are reviewed so that if the main appeal results in modification of the judgment his grievances will be determined as well.'" *Tr. for Certificate Holders of Merrill Lynch Mortg. Invs., Inc. Mortg. Pass-Through Certificates, Series 1999-C1, ex rel. Orix Cap. Mkts., LLC v. Love Funding Corp.*, 496 F.3d 171, 173–74 (2d Cir. 2007) (quoting *Hartman v. Duffey,* 19 F.3d 1459, 1465 (D.C. Cir.1994)); *see also Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.,* 40 F.4th 56, 68 (2d Cir. 2022) (holding that Second Circuit has appellate jurisdiction over cross-appeal of adverse personal jurisdiction ruling where cross-appellant otherwise would be at risk of adverse judgment on remand). If the appellate court decides on the direct appeal not "to reverse or modify the main judgment," the court of appeals does not reach the issues raised on the cross-appeal but rather dismisses it as moot. *Love Funding Corp.*, 496 F.3d 174 (internal citations omitted). Notably, the Second Circuit has held that where the district court has dismissed a case with prejudice for failure to prosecute, the prevailing party cannot appeal the court's antecedent determination that it possesses personal jurisdiction over the defendant. *See In re DES Litig.*, 7 F.3d at 24. "[T]he existence of an unfavorable interlocutory ruling—even one that may well be erroneous—does not confer standing on a prevailing party who is not otherwise aggrieved by the judgment." *In re DiPietro*, 2022 WL 880485, at *3.

Daniolos has not established its standing to appeal. Its principal complaint is about the comments made by the Bankruptcy Court in its ruling from the bench on March 12, 2025. In

those comments, the court stated that it disagreed with Daniolos's argument that Daniolos was not properly served and the court lacked jurisdiction over it. Tr. at 60:24–62:6. But Daniolos defeated Eletson's motion to hold Daniolos in contempt and to impose sanctions against it. The Bankruptcy Court found that "former majority shareholders, the purported provisional board, purported Provisional Eletson Holdings . . . have frustrated the Court's direct orders and the full implementation of the Court-ordered plan." *Id.* at 68:4–68:10 (internal citations omitted). It further found that "the former majority shareholders, the former minority shareholders, the purported provisional board, the purported Provisional Holdings, and Mr. Hadjieleftheriadis have failed to cooperate in good faith to implement and consummate the plan" and violated the confirmation order. *Id.* at 72:9–72:17 (internal citations omitted). The Bankruptcy Court found the same enumerated parties "in contempt of the confirmation order and this Court's January 29th order for failing to comply with their obligations and continuing to act in violation of the Chapter 11 plan, confirmation decision, the confirmation order, and the January 29th order." *Id.* at 73:18–73:25. It further found that the same enumerated parties "have a clear record of noncompliance", *id.* at 76:18–76:21, and "have not reasonably attempted to comply with the confirmation order," *id.* 77:2–77:6. The Bankruptcy Court concluded that "the following parties are found in contempt for violating the Chapter 11 plan, the confirmation order, and the January 29th order[:]. . . the former minority shareholders, the former majority shareholders, purported Provisional Eletson Holdings, the purported provisional board, and Vassilis Hadjieleftheriadis." *Id.* at 79:18–79:23.

The Bankruptcy Court's formal written order of March 13, 2025, contained those same findings, concluding that former minority shareholders, the former majority shareholders, purported Provisional Eletson Holdings, the purported provisional board and its members, and

5

Vassilis Hadjieleftheriadis were in contempt and imposed sanctions upon them. Dkt. No. 1-1. The Bankruptcy Court did not find that Daniolos was in contempt and did not impose sanctions against it.[5] Indeed, after stating that it rejected Daniolos's personal jurisdiction arguments, the Bankruptcy Court did not mention Daniolos again either in its oral ruling or in its written order.

This case thus closely resembles *In re DES Litigation*, in which the district court rejected the arguments of the appellant Boehringer Ingelheim Pharmaceuticals ("Boehringer") that the court lacked personal jurisdiction over it and that the complaint against it should be dismissed only ultimately to dismiss the case in its entirety after the plaintiffs settled with the other defendants. *See* 7 F.3d at 23. Boehringer, fearing that the court's jurisdictional rulings could be used against it in forty-two other DES products liability cases pending in New York, argued that those rulings were unconstitutional or constituted erroneous interpretations of New York law. *See id.* at 21, 23. The plaintiffs declined to appear in the court of appeals, apparently content that their settlements with other defendants satisfied their interests. *See id.* at 23. The Second Circuit nonetheless dismissed the appeal without ruling on the merits of the district court's jurisdictional holdings. *See generally id.* Even though the district court rejected Boehringer's jurisdictional arguments, the company ultimately prevailed on the merits when the case against it was dismissed for failure to prosecute. *See id.* It was insufficient that the court's jurisdictional holding was a necessary first step leading to the final judgment. *See id.* at 24. "Lack of personal jurisdiction is a waivable defect." *Id.* Accordingly, "[w]hether or not the 'necessary step' argument would apply appellate standing to a prevailing party who wished to challenge an adverse interlocutory ruling upholding subject matter jurisdiction, it does not apply to an

---

[5] Daniolos admits that the Sanctions Order did not impose any sanctions upon it. Dkt. No. 14 at 1.

6

interlocutory ruling upholding personal jurisdiction." *Id.* Moreover, the court's "rulings on personal jurisdiction . . . d[id] not appear on the face of the judgment" and therefore there was no aspect of the judgment that Boehringer sought to modify. *Id.* at 25. If the Circuit accepted Boehringer's invitation to hear the appeal and then ruled against Boehringer, a remand would only give "the plaintiffs a renewed opportunity to prosecute their claims." *Id.* The same points can be made here and the same result necessarily follows.

Daniolos' arguments are unavailing. Daniolos complains that if the Sanctions Order below is not reversed, the Sanctions Order will be given collateral estoppel effect with respect to the Bankruptcy Court's determination of its personal jurisdiction over Daniolos, and Daniolos will "subjected to the barrage of continued sanctions motion practice" Dkt. No. 14 at 11, 14; *see also id.* at 21. The argument appears to rest on the propositions that the parties who were sanctioned by the Bankruptcy Court will not comply with that court's orders, that Daniolos will take actions that would violate the court's orders, that Eletson will bring a motion for contempt against Daniolos, and that the Bankruptcy Court will find that Daniolos has violated its orders. As the Bankruptcy Court made clear in its rulings, it was the actions of the parties who violated its orders that have frustrated the plan of confirmation and the confirmation order. If those parties comply, presumably there would be no occasion for a contempt motion against Daniolos alone.

More importantly, however, this precise argument was rejected in *In re DES Litigation*. The Second Circuit acknowledged Boehringer's concern that the district court's jurisdictional rulings could be used against it in the forty-two other cases pending against it, but held that it was insufficient to give Boehringer standing to appeal because "[r]elitigation of an issue in a second action is precluded only if 'the judgment in the prior action was dependent upon the

determination made of the issue.'" *Id.* at 23 (quoting 1B Moore's Federal Practice ¶ 0.443[1] (2d ed. 1993)). It also ruled that its "decision to decline appellate review of the District Court's order confirms the lack of any possible collateral estoppel effect arising from the District Court's interlocutory rulings." *Id.* at 24.

Eletson affirms that the order below will not have any collateral estoppel effect. Dkt. No. 14 at 4 n.2 ("To the extent the Daniolos Firm suggests that it may be precluded from re-asserting its personal jurisdiction defense in the future unless its appeal is granted that concern is unfounded" (citing *DES Litig.*, 7 F.3d at 24)). Thus, should a new contempt motion be made against Daniolos and should Eletson not cure what Daniolos alleges were the jurisdictional defects in Eletson's prior motion, Daniolos will be able to argue, and the Bankruptcy Court may agree, that the views the court expressed from the bench on March 12, 2025 should be abandoned. Should the Bankruptcy Court nonetheless adhere to those views, and should it determine to impose sanctions upon Daniolos, it will also be open to Daniolos to appeal to this Court and to argue at that point that the Bankruptcy Court's jurisdictional holdings were in error.[6]

None of the other exceptions to the prevailing party rule apply here. Daniolos has not identified any other respect in which the trial court's judgment aggrieves it or any legal prejudice it has suffered from those rulings. In the event of a second contempt motion, it will be able to make all of the arguments it now makes. The Bankruptcy Court's order resolved the motion for contempt. Eletson has chosen not to appeal the Bankruptcy Court's ruling denying the request for a contempt finding against Daniolos and imposing sanctions. Thus, there is no risk that, if

---

[6] At this time, the Court thus expresses no opinion on the Bankruptcy Court's statements regarding jurisdiction.

this Court does not decide Daniolos's jurisdictional arguments, it will be subject to liability on remand.

Daniolos's appeal also must be dismissed for an independent reason. The Second Circuit has held "that in order to have standing to appeal from a bankruptcy court ruling, an appellant must be a person aggrieved—a person directly and adversely affected pecuniarily by the challenged order of the bankruptcy court." *In re Barnet*, 737 F.3d 238, 242 (2d Cir. 2013) (quoting *DISH Network Corp. v. DBSD N. Am., Inc.* (*In re DBSD N. Am., Inc.*), 634 F.3d 79, 89 (2d Cir. 2011)). "This test is 'stricter than Article III's "injury in fact" test,' and its 'stringency . . . is rooted in a concern that freely granting open-ended appeals to those persons affected by bankruptcy court orders will sound the death knell of the orderly disposition of bankruptcy matters.'" *Id.* (quoting *Licensing by Paolo, Inc. v. Sinatra* (*In re Gucci* ), 126 F.3d 380, 388 (2d Cir. 1997)). "Hence, a party to the bankruptcy proceedings is permitted to appeal a particular order only if the order directly affects his pecuniary interests." *Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 642 (2d Cir. 1988). The Second Circuit has continued to apply this test even after the Supreme Court's decision in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). *See, e.g.*, *Gorden v. Gazes (In re 22 Fiske Place, LLC)*, 2023 WL 4278189, at *3 (2d Cir. Jun. 30, 2023); *Meadows v. AMR Corp. (In re AMR Corp.)*, 2023 WL 2770228, at *1 (2d Cir. Apr. 4, 2023); *see also In re Highland Cap. Mgmt., L.P.*, 74 F.4th 361, 368 (5th Cir. 2023) (holding that "aggrieved person" standard survives *Lexmark*); *but see Kiviti v. Bhatt*, 80 F.4th 520, 534 n.11 (4th Cir. 2023) (stating that "whether bankruptcy appellate standing survives the Supreme Court's decision in [*Lexmark*] is an open question"), *cert. denied*, 219 L. Ed. 2d 1200 (2024); *In re Schubert*, 2023 WL 2663257, at *2–3 (6th Cir.

Mar. 28, 2023) (calling into question the "aggrieved person" test as a jurisdictional bar but stating that "the substance of the person-aggrieved test might live on as a zone-of-interest test").

The Sanctions Order does not directly and adversely affect any pecuniary interest of Daniolos. It does not require Daniolos to expend any funds nor does it require Daniolos to take any action. Indeed, it does not diminish Daniolos' property, increase its burdens, or detrimentally affect its rights. *See Matter of Point Ctr. Fin., Inc.*, 1188, 1191 (9th Cir. 2018). And, while the Second Circuit has stated that "[t]he '*public* interest' may also provide standing to appeal, as in the case of a United States Trustee, or the Securities and Exchange Commission," *In re DBSD N. Am., Inc.*, 634 F.3d at 89 n.3, Daniolos invokes only its own private interest, *see In re Old HB, Inc.*, 525 B.R. 218, 225 (S.D.N.Y. 2015). Accordingly, Daniolos is not a person aggrieved and it lacks standing to appeal.[7]

## CONCLUSION

Eletson's motion is GRANTED and this appeal is DISMISSED. The Clerk of Court is respectfully directed to close the motion at Dkt. No. 12 and to close this case.[8]

SO ORDERED.

Dated: July 9, 2025, 2025
New York, New York

_____
LEWIS J. LIMAN
United States District Judge

---

[7] In light of the Court's determinations that Daniolos is a prevailing party and not an aggrieved party, the Court need not address Eletson's argument that the Sanctions Order is not a final appealable order.

[8] Should there be future filings in this case, the parties are directed to properly identify appellee as Eletson Holdings Inc.

10